Arif Akhtar
565 Village Commons Blvd.
Camarillo, CA 93012
PH: (805) 402-5992
akhtar.arif@gmail.com
Plaintiff In *Pro Per*

**FILED**
CLERK, U.S. DISTRICT COURT

NOV 25 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rsm _____ DEPUTY

UNITED STATES DISTRICT

CENTRAL DISTRICT OF CALIFORNIA

**ARIF AKHTAR,**

    **Plaintiff,**

    vs.

**COMPOUND LABS, INC.,**
**COMPOUNDDEFI, INC.,**
**and DOES 1-9.**

    **Defendant.**

Case No. 2:23-cv-07440

**FIRST AMENDED COMPLAINT**

1. **BREACH OF CONTRACT**
2. **BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING**
3. **UNJUST ENRICHMENT**
4. **FRAUD**
5. **CONVERSION**
6. **PROMISSORY ESTOPPEL**

**DEMAND FOR JURY TRIAL**

1. ARIF AKHTAR (hereby "Plaintiff") is a Ventura County resident in California and brings this civil suit action pursuant to 28 U.S.C. § 1332; Diversity of Citizenship; whereby (a) the district courts shall have original jurisdiction of all civil actions and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between; and (1) citizens of different States. Here, the Plaintiff alleges and re-alleges all six causes of action against COMPOUND LABS, INC. and COMPOUNDDEFI, INC. (hereby "Defendant") and DOES 1-9.

## FACTS AND PROCEDURAL HISTORY

2. There was a breach of contract between the Defendant and Plaintiff, and if considered a quasi-contract, also known as contracts "implied in law," "impose duties that are deemed to

[FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL.] - 1

1  arise by operation of law, in order to prevent an injustice." *Lumbermens Mut. Cas. Co. v. United*
2  *States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (citing *Hercules Inc. v. United States*, 516 U.S. 417,
3  423 (1996)), *Kingman Water Co. v. United States*, 253 F.2d 588 (9th Cir. 1958); *United States v.*
4  *Independent School District No. 1 of Okmulgee, OK*, 209 F.2d 578 (10th Cir. 1954); *United*
5  *States v. Bentley*, 107 F.2d 382 (2d Cir. 1939). The contract can be contrasted with implied in
6  fact contracts, which are founded upon a meeting of the minds, which, although not embodied in
7  an express contract, is inferred, as a fact, from conduct of the parties. There was consideration;
8  there was an offer and an acceptance.

9      3. Every contract or duty within the Uniform Commercial Code imposes an obligation of
10  good faith in its performance and enforcement. See UCC § 1-303. There was wrong done to the
11  Plaintiff's investment when there was a breach of contract. This breach of contract was in
12  violation of the Uniform Commercial Code (UCC): Article 1 (General Provisions), Article 2
13  (Sales), Article 8 (Investment Securities), Article 4A (Funds Transfer), Securities Act of 1933
14  (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), California's
15  Corporate Securities Law of 1968 (the "California Securities Law"), and California's Unfair
16  Competition Law. Here, while doing business, the Defendant kept the Plaintiff's vibrant digital
17  investment (his growing "crypto currency"). Defendant prevented it from accumulating and did
18  not return his investment to him, in any tangible monetary way. There are damages for the past,
19  present, and future investment.

20      4. The first allegation, breach of contract, meets the legal requirements to be considered a
21  valid contract, with a valid "contractual agreement" that is enforceable, and can be enforced by
22  the law. There was an offer and an acceptance. The term "security" includes an "investment
23  contract," as well as other instruments such as stocks, bonds, and transferable shares.  A digital
24  asset should be analyzed to determine whether it has the characteristics of any product that meets
25  the definition of "security" under the federal securities laws. It qualifies as an investment
26  contract. See *Securities and Exchange Commission* v. *W. J. Howey Co.*, 328 U.S. 293.  The U.S.
27  Supreme Court has found that an "investment contract" exists when there is 1) the investment of
28  money, 2) in a common enterprise, 3) with a reasonable expectation of profits to be derived from

1  the efforts of others. The "*Howey* test" applies to any contract, scheme, or transaction, regardless
2  of whether it has any of the characteristics of typical securities. See *In re Tomahawk Exploration*
3  *LLC*, Securities Act Rel. 10530 (Aug. 14, 2018) (issuance of tokens under a so-called "bounty
4  program" constituted an offer and sale of securities because the issuer provided tokens to
5  investors in exchange for services designed to advance the issuer's economic interests and foster
6  a trading market for its securities).

7      5. This event constituted bad faith and unfair dealing to the Plaintiff, and anyone who did
8  business with the Defendant. As a result, the Plaintiff endured severe monetary damages on
9  investment. UCC § 1-201(19) manages transactions within Article 2, "good faith in the case of a
10  merchant means honesty in fact and the observance of reasonable commercial standards of fair
11  dealing in the trade."

12      6. A contract breach involving fraud is an intentional tort under the Federal Tort Claims
13  Act (FTCA) and 18 U.S. Code § 1341 - Frauds and swindles. Whoever, having devised or
14  intending to devise any scheme or artifice to defraud, or for obtaining money or property by
15  means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan,
16  exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any
17  counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or
18  intimated or held out to be such counterfeit or spurious article, for the purpose of executing such
19  scheme or artifice or attempting so to do…".  But for the fraud, the injury would not have
20  occurred. Fraud is both a civil tort and criminal wrong. Fraud is a promise that goes unfulfilled.
21  This may give rise to a claim for fraud under particular circumstances. Contract fraud occurs
22  when one party to a contract uses information that is false, misleading, or deceitful.

23      7. Unfair competition usually involves an element of consumer deception. Unfair
24  competition under the federal Lanham Act (15 U.S.C. § 1125) is commonly known as passing
25  off one's goods or services for another's.

26      8. The Plaintiff alleges and re-alleges that the Defendant's unfair methods of competition
27  were unlawful and affected his growing investment, which was done in commerce, and these
28  methods were unfair or deceptive acts or practices hereby declared unlawful.

9. The damage sustained constitutes unjust enrichment, driven by fraudulent deceptive business practices, and unfair competition. The Defendant was unjustly enriched at the expense of the Plaintiff's loss. See *Mt. Sinai Hospital of Greater Miami v. Weinberger*, 517 F.2d 329 (5th Cir. 1975); *J.W. Bateson Co., Inc. v. United States*, 308 F.2d 510, 514-515 (5th Cir. 1962).

10. Crypto currency is a currency available in electronic form. Currencies can be a government-authorized medium of exchange (see the UCC definition of "money" in §1-201(a)(24)), or they can exist through a decentralized system, with no central administrator controlling the currency supply. Decentralized currencies, which include Bitcoin, are not generated or supported by any central bank or other government agency; instead transactions are recorded through ledger entries across decentralized computer networks known as blockchains.

11. UCC §1-201(b)(24) defines "money," in part, as "a medium of exchange currently authorized or adopted by a domestic or foreign government." While one might first logically turn to "money" as the likely category for virtual currency, virtual currency undeniably functions as a payment mechanism similar to traditional tangible money.

12. Plaintiff had all his growing and vibrant currency taken from his wallet (or deposit account). This constitutes conversion. UCC §9-102(a)(29) defines "deposit account" in part as a "demand, time, savings, pass-book, or similar account maintained with a bank." UCC §9-102(a)(49) defines "investment property," in relevant part, as a "security, whether certificated or uncertificated, security entitlement, ... or securities account ... ." "Security entitlement" is defined in UCC §8-102(a)(17) as a "financial asset," which is itself defined in UCC §8-102(a)(15), in relevant part, as a "security," an obligation or interest of a type dealt in or traded on financial markets or recognized as a medium for investment, or any property held by a securities intermediary in a securities account if it has been agreed that the subject property is to be treated as a financial asset.

13. The Plaintiff has electronic records of his assets where the Defendant had control; controllable Electronic Records. According to the Committee, "controllable electronic records" is a subset of "digital assets." Under new Article 12, a "controllable electronic record" is a record (i.e., per UCC §1¬201(b)(31), information that is retrievable in perceivable form) that is stored in

an electronic or other intangible medium and can be subjected to control, as defined in proposed UCC §12-105.

14. Conversion is the deprivation of another's right to use or possess personal property. Conversion is often defined as other interference of a person's right to property without the owner's consent and without lawful justification. See *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442 (Pa. 1964). A conversion occurs when a person without authority or permission intentionally takes the personal property of another or deprives another of possession of personal property. It is a tort which allows the injured party to seek legal relief.

15. However, the intent or purpose to do a wrong is not necessary to establish conversion, merely intent to seize the property. See *Chem-Age Indus. v. Glover*, 2002 SD 122 (S.D. 2002). Thus, even if the defendant thought he or she had rights to the property, if they were wrong and intentionally seized it, they have converted the property wrongfully.

16. Within contract law, promissory estoppel refers to the doctrine that a party may recover on the basis of a promise made when the party's reliance on that promise was reasonable, and the party attempting to recover detrimentally relied on the promise.

'17. The promissory estoppel doctrine that a promise made without the exchange of **consideration** is binding and enforceable if: (1) the defendant made a clear and unambiguous promise, (2) the plaintiff acted in reliance on the defendant's promise, (3) the plaintiff's reliance was reasonable and foreseeable, (4) The plaintiff suffered an injury due to reliance on the defendant's promise. See *Graham-Suit v. Clainos*, 756 F.3d 724, 749-50 (9th Cir. 2013). A successful promissory estoppel claim prevents the defendant from denying the existence of a contract for lack of consideration and punishes the defendant for misleading the plaintiff to its detriment. See *Bocksel v. DG3 North America, Inc.*, at *10 (E.D.N.Y. Feb. 12, 2016). Courts typically limit the plaintiff's remedy to that which is necessary to avoid injustice.

## INTRODUCTION

18. The Plaintiff's first investment was deposited on April, 5th 2022, with the amount of $28.37. On June 28th, 2022, around 7:00 am, violations occurred when the Defendant withdrew (converted) over $12,083.28 from the Plaintiff's wallet (*Exhibit G*). The plaintiff had invested in CompoundDefi app to earn profits and experience growth. The growth rate would have far exceeded what was in his wallet in no time. It was against all logic and against the ordinary use of contract terms to simply cut off the Plaintiff. The Defendant explained that the Russians had hacked his account, and it was assumed that had happened without any evidence.

19. In a preliminary text between the Defendant's representative and the Plaintiff, the Defendants clearly states that investing with them is "risk free" and that not even the "world's top hackers" can't steal the currency (*Exhibit A*). The Defendant's conduct was extremely unethical and outrageous because Plaintiff's crypto currency (digital currency) was withdrawn from his wallet by the Defendant without his consent and without any valid reason.

20. Therefore, the Plaintiff complains and alleges and re-alleges against the Defendant that they violated his rights, and alleges and re-alleges that the Defendant is in Breach of Contract and is in violation of the Uniform Commercial Code (UCC): Article 1 (General Provisions), Article 2 (Sales), Article 8 (Investment Securities), Article 4A (Funds Transfer), Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), California's Corporate Securities Law of 1968 (the "California Securities Law"), and California's Unfair Competition Law.

21. The Defendant failed to file an official statement for his currency sold or lost or by failing to inform the Plaintiff, as an investor, the Defendant violates the *Securities Act of 1933* and the *Securities Exchange Act of 1934* and took out his investment and without allowing him to make an informed investment decision.

22. On April 3, 2019, the Securities Exchange Commission (SEC) released an assessment strategy, "Framework for 'Investment Contract' Analysis of Digital Assets" (Framework), which identified the factors for determining whether a digital asset, like crypto currency, is an

"investment contract" and therefore subject to the *Securities Act of 1933* and the *Securities Exchange Act of 1934*.

23. An "investment contract," as defined by the U.S. Supreme Court, exists when there is investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 294 (1946). This definition applies to any contract, scheme, or transaction, regardless of whether it possesses any of the characteristics of typical securities.

24. Investors and issuers of digital assets has been a rapidly evolving market that was recently legitimized by *President Joe Biden's March 9 executive order*. President Biden declared in *Sec. 1* that digital assets can have profound implications on consumers, investors, and business. In *Sec. 2* he declared that the United States should protect consumers, investors, and business from financial instability and mitigate systemic risk. Sec. 2 (d) further states that technological and economic competitiveness should grow through responsible development of payment innovations and digital assets. The Defendant promised the Plaintiff that his funds would always be safe as long as he did not reveal his password (*Exhibit B*).

25. The Defendant misappropriated the Plaintiff's digital investment in an act of conversion and the Plaintiff was not given a contractual reason as to why the Defendant withdrew his crypto currency. Defendant's conduct constitutes unethical, competitively unfair, fraudulent, and Unlawful Business Acts or Practices (*Cal. Bus. & Prof. Code §§ 17200 et seq.*) The Plaintiff has filed a police report at the Camarillo Police Department (Police Report #: 22-8895). Plaintiff asks for his digital assets/investment restored and returned, or the monetary value of his digital assets along with damages.

26. The Plaintiff suffered an investment loss that was growing fast. It was an immediate loss of $12,083.28. For compensatory, consequential, general, punitive, and special damages and/or restitution in an amount to be determined at trial for loss of investment, of trade all in the amount of $5 million dollars (five million dollars). Plaintiff invested close to $8,000.00 by depositing in his Coinbase wallet account and it grew to a little over $12,000.00 within a few weeks. Plaintiff's investment was accumulating strongly. Without his permission, Defendant

withdrew a little over $12,000.00 worth of USDT from Plaintiff's Coinbase wallet. Defendant's Coinbase wallet and compoundDefi app had the capability to show the daily earnings the total amount of USDT in wallet.

27. Defendant has strength in the crypto market (digital currency). Market cap is $407.99 million as of today. Compound Labs, Inc. who manages Comp also manages an app, CompoundDefi, meant for Defi liquidity mining. CompoundDefi is where the Plaintiff opened his account and invested USDT via Coinbase Wallet. CompoundDeFi app and CompoundDefi website has been shut down since the end of 2022. It was compoundDefi app where the plaintiff saw the growth of his investment. Plaintiff's USDT assets worth more than $12,000 were removed from Coinbase Wallet by Defendant.The Plaintiff invested in their Defi liquidity mining app that was mainly built on the Ethereum blockchain, and provides liquidity through Defi products on Ethereum to obtain miner's income. Comp is a very prominent coin in the crypto finance space to grow with. Simply put, one only needs to deposit USDT in the Coinbase wallet app and allow Compound Labs, Inc. Defi app to access the USDT to mine, in return you get a percentage of money invested which gets deposited to the investors account after every 6 hours.

28. Defendant brings in costumers in order to invest in crypto currency for trading and investing purposes and then advertises large investments in trade. The Plaintiff was treated with a lack of regard with his investment.

29. The Plaintiff alleges and re-alleges the following actions in this First Amended Complaint for Breach of Contract, Breach of the Covenant of Good Faith & Fair Dealing, Unjust Enrichment, Fraud, Conversion, and Promissory Estoppel.

## JURISDICTION AND VENUE

30. The Plaintiff accepts this civil suit action to be proper in this court pursuant to 28 U.S.C. § 1332; Diversity of Citizenship; whereby (a) the district courts shall have original jurisdiction of all civil actions and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between; and (1) citizens of different States.

Jurisdiction is proper in the State of California for the County of Ventura pursuant to Section 410.10 of the Code of Civil Procedure. This Court has personal jurisdiction over Defendant because they conducted and continue to conduct substantial business in the State of California, County of Ventura, and Defendant's websites are available for business across California. Further, the Court has personal jurisdiction over Defendant because Defendant either conducted business in this District or are present in this District for jurisdictional purposes.

31. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 15 U.S.C. § 77v, and 15 U.S.C. § 78 because Plaintiff allege violations of the *Securities Act of 1933* and *Securities Exchange Act of 1934*. More, the Defendant has had sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

32. Defendant solicited investors in this District and obtained money or valuable crypto currency from those investors, including Plaintiffs. Defendant have purposefully availed themselves of the benefits of operating in this jurisdiction, and this Court may exercise personal jurisdiction over Defendant. The Defendans (Compound Labs, Inc. and Compounddefi, Inc.) are "domiciled" in the California, and therefore governed by law in this court. Consequently, the Defendant maintains physical corporate headquarters in San Francisco, California. Venue is proper in this court because Defendant conducted substantial business in this County.

## FACTUAL ALLEGATIONS

1. Plaintiff opened up an account with CompoundDefi app (website https://compound.finance ) and used their app for crypto currency investment prospects.

2. Plaintiff's first investment was deposited on April, 5th 2022, in the amount of $28.37. The contractual agreement was discussed in a series of texts to the Plaintiff which can be read as *Exhibit A, B, C, D, E* and *F* (attached).

3. The website is related to the app and where the top management of Defendant and their names were listed https://compounddefi.vip .

This website is not operational since the end of 2022. It showed same management as the website for Compound Labs, Inc . Screenshot included for https://compounddefi.vip (*Exhibit* F).

4.  On June 28th, 2022, around 7:00 am, Defendant (Compound Labs, Inc. and Compounddefi, Inc.) took out (withdrew) from Plaintiff's digital wallet $12,083.28 without his consent.

5.  For the terms of agreement and safety of the investment, a series of texts with CompoundDeFi team. The team that managed CompundDeFi also manages Compound Labs, Inc. clearly states the degree of safety of this investment—that investment with Defendant is secure and in their own words "it is risk free" and "…even the world's top hackers cannot steal your crypto assets" (*Exhibit A*).

6.  The Plaintiff was assured that he would have no problems unless his password was leaked. The CompoundDeFi app associates had been indicating that Plaintiff could lose everything in that case (if there was a password leak). The Plaintiff has not been getting his money back. There was no password issue but Plaintiff was not being helped with the issue of Defendant withdrawing his money (crypto assets) out of his wallet (account).

7.  Plaintiff has lost time, money, and energy with his investment and should have been professionally taken care of. The Defendant was not communicating with the Plaintiff to help. Plaintiff's expense was too high during the mining process that Defendant described he needed and in the end Defendant merely took his money (crypto currency) and gave him no return. His investment stopped accumulating.

8.  The Plaintiff lost his entire investment gain and without any valid contractual reason.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

There was consideration, an offer, and an acceptance. Plaintiff alleges and re-alleges that the Defendant is in Breach of Contract and is in violation of the Uniform Commercial Code

[FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL.] - 10

(UCC): Article 1 (General Provisions), Article 2 (Sales), Article 8 (Investment Securities),
Article 4A (Funds Transfer), Securities Act of 1933 (the "Securities Act"), the Securities
Exchange Act of 1934 (the "Exchange Act"), California's Corporate Securities Law of 1968 (the
"California Securities Law"), and California's Unfair Competition Law.

Defendant willfully and wrongfully exercised control over and/or intentionally interfered
with the rights of Plaintiff and his investment (property) when they violated contract and
withdrew his funds from his digital wallet. The Plaintiff lists the following statements of the
cause of action for relief:

1. Defendant failed to fulfill their promise to continue to let investment grow; to provide
   Plaintiff with any warning or notice of unlawful handling of his investment and
   withdrew his current gain worth $12,083.28.

2. Defendant wrongfully removed Plaintiff's investment from his wallet and broke
   agreement on contract.

3. The Plaintiff asked the Defendant to give him his investment back but did not get
   anything returned. Defendant conjured up a story that Russians have hacked
   Plaintiff's account. Then a few hours later they changed it, that if I deposit half of lost
   Amount, then the total lost amount can be recovered. But I didn't accept that option
   of depositing another $6000.00 to Coinbase wallet to lose more money.

4. Defendant's actions have damaged Plaintiff's business ventures and future
   opportunities as a result of the handling of his crypto currency, which caused
   conversion of his investment.

5. Defendant's conduct was without respect for Plaintiff's investment.

6. The Plaintiff would like to recover his crypto currency and what he would have
   vested by now as just compensation for the loss of investment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING

Under the UCC, every contract has an implied covenant of good faith and fair dealing which requires that the parties refrain from doing anything to unfairly interfere with the right of the other party to receive the benefits of the contract. UCC § 1-201(19) manages transactions within Article 2, "good faith in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

1. Defendant's breach of the covenant of good faith and fair dealing where their conduct was a substantial factor in causing Plaintiff's damages.

2. The Defendant;s failed to compensate or return to Plaintiff the monies (crypto currency) that was unlawfully withdrawn from his wallet (account) without notice or explanation.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

Defendant should not be permitted to unjustly enrich himself at the expense of Plaintiff, but should be required to make restitution for the property or benefits received, retained, or appropriated, where it involves violation or frustration of law or opposition to public policy, either directly or indirectly." See *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793.

1. As a result of their failure to build and launch the Plaintiff's digital assets in Defendants' own account, and do not make an accounting of the Plaintiff's funds, the Defendants has been unjustly enriched at the expense of Plaintiff.

2. The Plaintiff is entitled to recover monies from Defendants to remedy such unjust enrichment, including the return of all purchase of crypto currency and accrued investment, and reimbursement for services rendered to Defendant.

3. The Defendant was unjustly enriched at the expense of the Plaintiff's loss.

# FOURTH CAUSE OF ACTION

## FRAUD

Defendant had a duty to accurately and completely disclose material information to Plaintiff regarding the potential investments in crypto currency. A contract breach involving fraud is an intentional tort under the Federal Tort Claims Act (FTCA) and 18 U.S. Code § 1341 - Frauds and swindles.

1. Defendant acted with extreme and outrageous conduct when they conducted the removal of the Plaintiff's crypto currency. The intent was wrongful deception by the Defendant to cause the Plaintiff financial loss.

2. Plaintiff invested in CompoundDeFi app, which is meant to operate on DeFi liquidity mining principles and was mainly built on the Ethereum blockchain, and provides liquidity through Defi products on Ethereum to obtain miner's income.

3. Defendant stole Plaintiff's crypto currency in the amount of $12,083.28 from his digital wallet and by now it could be worth much more. The act was done with causing, or instigating reckless disregard of the probability of causing, emotional harm.

4. As a result, the Plaintiff has suffered severe emotional or extreme emotional distress.

5. The actual and proximate cause of the emotional distress was due to the Defendant's outrageous conduct of fraud.

6. The Defendant violated the Securities Act(s) which grants Plaintiff a right of action for damages against them and the Defendant for their violations of this provision.

7. *Sec. 15* of the *Securities Act of 1933* provides for joint and several liability for "controlling persons" who had sufficient power or influence over a person or entity that violated federal securities laws:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any

person liable under section 77k or 77l of this title, shall also be liable jointly and severally with and to the same as extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist; 15 U.S.C. § 77o(a).

## FIFTH CAUSE OF ACTION
## CONVERSION

In general, theft by conversion is an act that occurs when an individual legally takes possession of another individual's personal property or money then uses that personal property or money for their own purposes rather than for the purpose that the owner originally gave them permission for to use it. Conversion is often defined as other interference of a person's right to property without the owner's consent and without lawful justification. See *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442 (Pa. 1964). A conversion occurs when a person without authority or permission intentionally takes the personal property of another or deprives another of possession of personal property. It is a **tort** which allows the injured party to seek legal relief.

1. Defendants intentionally and substantially interfered with Plaintiffs' right by failing return the crypto currency that was gained and by preventing Plaintiff from having his investment of any value or at all. In particular, among other interference by Defendant; Defendant misappropriated, commingled, and/or misapplied funds belonging to Plaintiff for personal gain and/or for the benefit of Defendant's capital.

2. Defendant did so without Plaintiff's consent.

3. Defendant conduct was a substantial factor in causing Plaintiff's harm. In addition to seeking compensatory damages, because of the malicious, oppressive, and fraudulent nature of the conduct of Defendant, Plaintiff seeks punitive damages in an amount sufficient to recover lost funds, accrued investment and punish and deter them.

## SIXTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL

Within contract law, promissory estoppel refers to the doctrine that a party may recover on the basis of a promise made when the party's reliance on that promise was reasonable, and the party attempting to recover detrimentally relied on the promise. The promissory estoppel doctrine that a promise made without the exchange of **consideration** is binding and enforceable if: (1) the defendant made a clear and unambiguous promise, (2) the plaintiff acted in reliance on the defendant's promise, (3) the plaintiff's reliance was reasonable and foreseeable, (4) The plaintiff suffered an injury due to reliance on the defendant's promise. See *Graham-Suit v. Clainos*, 756 F.3d 724, 749-50 (9th Cir. 2013).

1. Defendant made a promise to build investment for Plaintiff and to release and distribute crypto currency to investors including the Plaintiff whenever he wanted or needed to. In a text with the Defendant, the Defendant stated that "Your funds are in your wallet you can withdraw money at any time" (*Exhibit B*).

2. Defendant made a promise to build Plaintiff's investment and that his investment would safe (*Exhibit A*).

3. Defendant intended that Plaintiff rely on their promise.

4. Plaintiff reasonably relied on Defendant's promise.

5. Plaintiff's reliance on Defendant's promise was a substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

1) For relief on all claims.

2) Declaring that Defendant is liable to Plaintiffs under the Securities Act of 1933, the Exchange Act of 1934, and all allegations herein according to the UCC California;

3) Awarding Plaintiff rescission;

4) Awarding compensatory damages, including lost profits;

5) Awarding Plaintiff punitive damages in an amount sufficient to punish and deter Defendant;

6) For statutory damages, treble damages, and special or exemplary damages to the extent permitted by law;

7) For compensatory, consequential, general, punitive, and special damages and/or restitution in an amount to be determined at trial for loss of investment, of trade all in the amount of $5 million dollars (five million dollars);

8) For costs of suit;

9) For all such other relief as the Court deems just and proper.

## CONCLUSION

The Plaintiff prays for relief, justice, and the recovery of lost funds that should have accrued on investments to date that are equivalent to the amount had the USDT not been removed. For this reason, the Plaintiff moves forward with his complaint.

Dated: November 24nd, 2023.

/s/

Plaintiff's name (sign)

Arif Akhtar
565 Village Commons Blvd.
Camarillo, CA 93012
PH: (805) 402-5992
akhtar.arif@gmail.com
Plaintiff In *Pro Per*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

RedPocket 📶 🛜                2:06 PM                    ⏸ 🔋

‹        ⬢  **+852 6293 2447**              
              last seen today at 7:05 AM

                    Hacking or Eth crashes?  5:35 PM

You
For 1 day?

no  5:35 PM

more than 30 dollars a day   5:36 PM

It is risk-free. First, because your
USDT is in your wallet, even the
world's top hackers can't steal
your crypto assets. Second, the
USDT we use is a stable currency
and will not rise like BTC and ETH. .
                            5:36 PM

                        Okay   6:38 PM ✓✓

            Have you been doing it for a while?
                                6:38 PM ✓✓

                  Wed, Apr 6
                                        

Yes  5:58 AM

+                                

# EXHIBIT B

RedPocket 🔅 VPN     11:32 PM

You
6/28/22, 1:04 PM                All Media

mining ETH so far?

What the name of this company?

Is it a startup?

What are the odds of this
operation going belly up?

Suppose if some goes wrong for
mining Eth, are my USDT secure in
Coinbase wallet?

Your funds are in your wallet, you
can withdraw money at any time,
as long as your password is not
leaked, your funds are safe    2:17 PM

The mining pool will not have any
problems

All these questions are popping up
in my mind before I increase my

1
2
3

# EXHIBIT C



4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D



RedPocket 🛜    5:09 PM

< Back    **Lion(accoun Manager)**

What do I need to do to verify my wallet?

Please list the steps that I need to take to verify my wallet?

You need to deposit 50% of the pool funds to your wallet within a week as wallet identity verification, the verification time is 1-3 business days, when the verification is successful, then all the funds of the pool will be returned to your cryptocurrency wallet

I don't have 50% of pool funds?

Mining pool has more than 12000?

Can CompuundDefi move USDT to my wallet, I will return USDT once mining pool is returned?

Hello, the wallet needs to be verified by itself

I will check within authorities

# EXHIBIT E



## Share the Compound price chart
coinbase.com/price/compound





Messages     Story     Copy link     More

# EXHIBIT F

compounddefi      Home   Introduction   Services   LearnToExplain   Testimonials      Contact   Partners

## TEAM

Creating an economically fair world



**Robert Leshner**
CEO
Chartered Financial Analyst,
former economist, and founder of
two software startups.



**Geoffrey Hayes**
CTO
Maintainer of Exthereum,
technology founder of two
startups, led Core Services at
Postmates.



**Torrey Atcitty**
Application Lead
Led mobile development at
Postmates, Kahuna, and Aha
Mobile.

**Coburn Berry**
Senior Engineer
Experienced web stack engineer
from The RealReal; previously an
attorney.

[FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL.] - 22

# EXHIBIT G



# Exhibit H



4:48

English          compounddefi



**Receive Voucher**
**Timing income**
Join the nose and start mining

## Pool Data

|  | 1,808,882,600000 ETH |
|  | 5,656 |
|  | 2,787,283 |
|  | ≈ 3,320,368,811,734 U |

### Mining
kg icity Mining Revenue

## Output details



